UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60523-CIV-COHN

HALEY M. BOLIN, a minor by JENNIFER
J. BOLIN and NATHAN BOLIN, and
JENNIFER J. BOLIN and NATHAN BOLIN.     Magistrate Judge Seltzer
Individually,

    Plaintiffs,

vs.

SMITHKLINE BEECHAM Corporation
d/b/a GLAXOSMITHKLINE, a Pennsylvania corporation,
APOTEX CORP. and APOTEX, INC.,

    Defendants.
_____/

## ORDER DENYING MOTION TO REMAND
## ORDER GRANTING IN PART MOTION TO DISMISS

THIS CAUSE is before the Court upon Plaintiffs' Motion to Remand and Motion for Attorneys Fees and Costs [DE 15] and Defendants Apotex Corp. and Apotex Inc.'s Motion to Dismiss [DE 6]. The Court has carefully considered the motions, responses and replies thereto, and is otherwise fully advised in the premises.[1]

### I. BACKGROUND

Plaintiffs filed this action in Broward County Circuit Court alleging various claims of negligence and product liability against manufacturers and/or distributors of a psychopharmaceutical drug that is alleged to have caused birth defects in the minor child in this case. Plaintiffs are residents and citizens of states other than Pennsylvania and Florida. Defendant SmithklineBeecham Corporation is a citizen of Pennsylvania.

---

[1] Plaintiffs did not file a reply in support of their motion to remand.

Defendant Apotex Corporation ("Apotex Corp.") has its principal place of business in Weston, Florida, and is a wholly owned subsidiary of Defendant Apotex, Inc., a Canadian corporation (collectively, "Apotex Defendants").

On April 11, 2008, prior to being served, Defendant SmithKline Beecham removed this case to this Court. The Florida defendant, Apotex Corp., was not served until April 16, 2008. On April 28, 2008, the Apotex Defendants moved to dismiss this case based upon federal preemption. On May 8, 2008, Plaintiffs moved to remand the case pursuant to 28 U.S.C. § 1441(b), the "forum-state defendant rule" because a Florida defendant, Apotex Corp., is in the case. Defendants oppose the motion to remand

## II.  MOTION TO REMAND

On a motion to remand, the removing party bears the burden of establishing jurisdiction. Tapscott v. M.S. Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th cir. 1996), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir. 2000); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). In this case, there is no dispute that complete diversity exists, both now and at the time of removal. However, Plaintiffs seek remand because pursuant to 28 U.S.C. § 1441(b), a forum state defendant cannot remove an action. The statute states that for diversity jurisdiction, any "such action shall be removable only if none of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Thus, even though a federal court may have original jurisdiction over an action, the forum defendant rule forbids removal of such action.

## A.  Forum Defendant Rule[2]

Plaintiff states that United States Court of Appeals for the Eleventh Circuit precedent, as well as Supreme Court precedent, mandate remand in this case. However, Plaintiff has incorrectly equated diversity jurisdiction with the forum defendant rule's ban on removal of certain cases that otherwise meet the diversity jurisdiction requirement.  Hurley v. Motor Coach Industries, Inc., 222 F.3d 377, 379-380 (7th Cir. 2000) (forum defendant rule is not jurisdictional); Snapper, Inc. v. Redan, 171 F.3d 1249, 1258 (11th Cir. 1999).  Thus, Plaintiff's reliance on decisions questioning diversity jurisdiction cases is not determinative of this forum defendant issue.  Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1297 (11th Cir. 2007); Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001).  Moreover, in this case there is no issue of fraudulent joinder, no non-diverse defendant, and diversity jurisdiction is clearly present.

Where complete diversity exists, it is unclear whether the inclusion of an unserved resident defendant defeats removal under 28 U.S.C. § 1441(b).[3]  The plain language of the statute requires the resident defendant to be "properly joined and served" to defeat removal.  28 U.S.C. § 1441(b).  Thus, the present situation is distinguishable from cases where "the existence of diversity is determined from the fact of citizenship of the

---

[2] This Court previously addressed this issue in Masterson v. Apotex, et al, 2008 WL 2047979 (S.D.Fla 2008) (Case No. 07-61665-Civ).  The Court repeats most of that decision herein.

[3] Where there is no issue of fraudulent joinder of a defendant, the forum defendant rule does not arise often.  It can only arise, as in this case, when plaintiffs are not "forum state" citizens.

parties named and not from the fact of service." New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 883 (5th Cir. 1998).  Rather, in the more specific context of the forum-state defendant rule in § 1441(b), Congress has apparently determined that the Court only look at "properly joined and served" defendants.  At least in passing, one Circuit Court of Appeals agrees with this conclusion.  McCall v. Scott, 239 F.3d 808, 813, n.2 (6th Cir. 2001).

The district court decisions on this issue are split.  Defendants rely upon Ott v. Consolidated Freightways Corporation, 213 F.Supp.2d 662, 665 (S.D.Miss. 2002), which answers the precise question of this case by concluding that unserved defendants at the time of removal may be ignored for § 1441(b) purposes.   Other cited cases following Ott are cited as well.  Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177, 180-81 (S.D.N.Y. 2003) (case remanded because defendant in question was in fact served, but legal conclusion of Ott followed); Clawson v. FedEx Ground Package System, Inc., 451 F.Supp.2d 731, 735-36 (D.Md. 2006).

In the only published, non-fraudulent joinder decision cited by Plaintiffs,[4] the Court in Oxendine v. Merck and Co., Inc., 236 F.Supp.2d 517, 524-25 (D.Md. 2002), held that because the law prior to enactment of § 1441(b) stated that where a non-separable

---

[4] In its research, the Court uncovered a Circuit Court of Appeals' description of the district court decision under review in Holmstrom v. Peterson, 492 F.3d 383, 385 (7th Cir. 2007), wherein the lower court recognized that the plain language of the statute required the forum defendant to be properly served to defeat removal, but still held that because there was no indication that plaintiff in that case named the forum state defendant solely to defeat removal, it granted the motion to remand.  The Seventh Circuit concluded it lacked jurisdiction to review this procedural defect for other reasons.

4

controversy involves a resident defendant, the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant. However, this Court agrees with the decisions concluding that § 1441(b) as amended limits looking only at "properly joined and served" defendants at the time of removal where diversity jurisdiction is not an issue.

Plaintiffs also raise policy concerns regarding acceptance of Defendants' arguments. However, in addition to the statutory language and case law, policy considerations also support Defendants. Removal is "intended to protect out-of-state defendants from possible prejudices in state court." Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006). The purpose of the forum state defendant rule is to allow plaintiffs to choose a forum because a forum state defendant does not need the protection of removal rights. However, in the limited situations such as the present case when a non-forum state defendant removes a case also involving a forum defendant, it is necessary to only consider properly served defendants so as to not allow a plaintiff to thwart removal rights of diverse, non forum state defendants by not serving the forum state defendant.[5] To avoid this result, plaintiffs can control the situation by attempting immediate service upon a forum state defendant when filing such a case in state court.

---

[5] Plaintiffs also rely upon a series of unpublished decisions from the Eastern District of Pennsylvania involving some of the same parties as the present case. Takia Malone v. GlaxoSmithKline PLC, et al, Case No. 07-5048, Order at docket entry 4 (December 4, 2007). However, in Malone, SmithKlineBeecham was both the forum state defendant and the removing defendant. The Court there concluded that allowing removal because SmithKlineBeecham was not yet served would defeat congressional intent, citing to Oxendine. This Court not only disagrees with Oxendine, but factually distinguishes the Pennsylvania cases because in the present case the removing defendant was not the forum-state defendant.

### B.  Lack of Complete Consent and Amount in Controversy

Plaintiffs also argue that removal was improper because the Apotex Defendants did not consent to removal and the amount in controversy does not satisfy subject matter jurisdiction.  Turning to the amount in controversy, because the plaintiff's state court complaint seeks an unspecified amount of damages, the defendant must establish the amount in controversy by a preponderance of the evidence.  <u>Tapscott</u>, 77 F.3d 1359-60.  Defendants argue that the Complaint's allegations of "immature lung development and severe respiratory problems" in an infant born with "severe respiratory distress," make it more likely than not that the damages will be over $75,000.  Complaint, ¶¶ 19, 30.  Plaintiffs seek damages for pecuniary loss, loss of consortium, general and medical damages and related expenses, and punitive damages.  Complaint, ¶¶ 40-42, 46-48, 58-60, 66-68, 74-76, 85-87.   The Court can conclude that these damage allegations alone meet Defendants' burden to show that the amount in controversy is greater than $75,000.

Turning next to Plaintiff's argument regarding lack of unanimity of consent, an exception to the unanimity requirement is lack of service upon the other defendants.  <u>White v. Bombardier Corp.</u>, 313 F.Supp.2d 1295, 1299 -1300 (N.D.Fla. 2004), citing <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 354 (1999).  However, there is a split in the case law in cases where multiple defendants are served at different times.  Some courts follow the "first-served" defendant rule, which requires a later-served defendant to remove or consent to removal within thirty days of service upon the first-served defendant, even if more than thirty days has passed, while others have held that a later-served defendant has thirty days from its receipt of service to remove with

6

consent of the others.  Smith v. The Health Center of Lake City, Inc., 252 F.Supp.2d 1336, 1341-1345 (M.D.Fla. 2003) (collecting cases).

In a recent published decision, the United States Court of Appeals for the Eleventh Circuit adopted the later-served defendant rule.  Bailey v. Janssen Pharmaceutica, Inc., --- F.3d ---, 2008 WL 2894742 (11th Cir. July 29, 2008).  The Court held that the first-served defendant rule deprives later-served defendants of their right to remove a case, and imposes the word "first" into the plain language of 28 U.S.C. § 1446(b).  The Eleventh Circuit followed the trend of the other Circuit Court of Appeals who have considered the issue.  McKinney v. Board of Trustees of Mayland Cmty. College, 955 F.2d 924, 926-27 (4th Cir. 1992); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999); Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 755-56 (8th Cir. 2001).

Applying the later-served defendant rule to this case requires one more step.  Here, the case was removed even before service.  However, using the reasoning of the later-served defendant rule in the context of the need for unanimity of consent, a later-served defendant should have 30 days to consent to removal.  The Apotex Defendants did in fact file a Notice of Consent on May 9, 2008, within thirty days of removal on April 11, 2008 [DE 16].  Therefore there is no defect in removal procedure and the motion to remand must be denied.

### III.  MOTION TO DISMISS

Turning next to the Apotex Defendants motion to dismiss, the Court has addressed this same motion, response and reply in the related case of Masterson v.

Apotex, Case No. 07-61665-Civ-JIC. The Court will repeat its ruling here.

### A. Motion to Dismiss Standard

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965. As under Conley, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." Id. at 1974.

## B.  FDCA Preemption

"A state law that conflicts with a federal law is preempted under the Supremacy Clause of the United States Constitution, art. VI, cl.2."  Mensing v. Wyeth, --- F.Supp.2d ---, 2008 WL 2444689 (D.Minn. June 17, 2008).  The Apotex Defendants assert that the Plaintiffs' state law claims for negligence, negligent design, strict liability (design), strict liability (failure to warn), and loss of consortium claims are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 21 U.S.C. 301-397, and implementing regulations of the Food and Drug Administration ("FDA").  This exact legal question was recently considered by the United States Court of Appeals for the Third Circuit, resulting in the first published opinion by a federal appeals court on this issue.  Colacicco v. Apotex, 521 F.3d 253 (3rd Cir. 2008).

The Third Circuit described in detail in Part II of its opinion the statutory and regulatory provisions that govern FDA approval of newly listed drugs and generic drugs, as well as labeling requirements and post-approval regulation.  This Court adopts and incorporates by reference here Part II of the Colacicco opinion discussing the FDA regulatory scheme.  521 F.3d at 257-260.

In Part IV of its opinion, the Third Circuit discussed the various preemption theories and the Supreme Court's decisions affecting the preemption analysis.  Preemption can be express or implied, with two forms of implied preemption: "field preemption" and "conflict preemption."  Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985).  The FDCA does not contain an express preemption provision.  Rather, Defendants assert that because it is impossible to comply with both

the FDCA and with state common law regarding failure to warn, the state common law is impliedly preempted under the conflict preemption doctrine.

Traditionally, in implied preemption cases, a presumption against preemption existed where Congress has legislated in a field in which the States have traditionally occupied. Medtronic v. Lohr, 518 U.S. 470, 485 (1996). However, recent Supreme Court cases have called this presumption into question in conflict preemption cases. Colacicco, 521 F.3d at 264, citing United States v. Locke, 529 U.S. 89, 94 (2000), Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347-48 (2001) (fraud upon the FDA claim found preempted), Riegel v. Medtronic, Inc., 128 S.Ct. 999 (2008) (Medical Device Amendments ("MDA") to FDCA expressly preempt state common law claims -- Supreme Court did not discuss preemption presumption as it did in Lohr, also an MDA case).

The Apotex Defendants assert, based upon this recent case law, as well as Geier v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000),[6] that in conflict preemption cases in an area of the law with a long-standing federal presence, there is no presumption against preemption. Plaintiffs argue that states have long legislated in the area of public safety. The Colacicco opinion appears to side with the Defendants' view as it stated that "[defendant's] argument that the presumption against preemption is inapplicable in the context of implied conflict preemption has more force." 521 F.3d at 265.

---

[6] Geier involved an express preemption provision with regard to auto safety that also contained a "savings clause" for state common law tort actions. The Supreme Court found conflict preemption against such tort claims despite the savings clause. 529 U.S. at 881.

10

The Court hereby adopts this analysis as well, with the conclusion that the presumption against preemption is inapplicable in the context of implied conflict preemption.  In addition, the Court agrees with the Third Circuit and those cases that find that the FDA's expressed views on preemption are only "entitled to respect," not the full deference accorded to regulations that have the force of law.  Colacicco, 521 F.3d at 274-75, citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).

### C.  Generic Drugs and Preemption

At this point, having determined that implied preemption of state tort claims regarding failure to warn of certain dangers of prescription drugs could be proper, the facts of this case differ from those present in <u>Colacicco</u>.  In <u>Colacicco</u>, the plaintiffs were suing for failure to warn of the increased dangers of suicide in patients taking Paxil and its generic equivalents.  The FDA had specifically considered an additional warning for adult suicidality several times and rejected such a warning.  <u>Id.</u> at 269.  The Third Circuit stated that "a state-law obligation to include a warning asserting the existence of an association between [Paxil] and suicidality directly conflicts with the FDA's oft-repeated conclusion that the evidence did not support such an association."  <u>Id.</u> at 271.  Therefore preemption was proper in <u>Colacicco</u> because the FDA had clearly and publicly stated its position that no warning was required prior to the prescriptions and deaths at issue.   <u>Id.</u>

The Third Circuit specifically did not address the issue relevant to the case at bar concerning whether claims against "generic drug manufacturers are preempted on the basis of their obligations under the Hatch-Waxman Amendments [to the FDCA]."  <u>Id.</u>

11

Rather, the holding is "limited to circumstances in which the FDA has publicly rejected the need for a warning that plaintiffs argue state law requires." Id. at 272.[7]

The Apotex Defendants assert that the result in Colacicco supports their argument that the more stringent labeling requirements on generic drugs leave no room for a generic manufacturer to change a label to comport with state law.[8] Following Congressional approval of the Hatch-Waxman Act, FDA authority to reject generic drugs is limited. Generic drugs are now approved after filing of an Abbreviated New Drug Application ("ANDA"), in which the manufacturer must show bioequivalency to a listed pioneer drug, but need not submit new safety studies. 21 U.S.C. § 355(j)(2)(A)(iv) and sentence at end of subsection (j)(2)(A). Generic drugs are required to have the same label as the listed drug. 21 U.S.C. § 355(j)(2)(A)(v); 21 C.F. R. § 314.150(b)(10) (regulation allowing FDA to withdraw approval of an ANDA if labeling not consistent with listed drug).

Apotex further argues that while drug manufacturers of listed drugs have some ability to change or request a change to drug labeling by the FDA, a generic drug must continue to have the same label as the pioneer listed drug to which it is bioequivalent.

---

[7] The Third Circuit noted that the Supreme Court of Vermont has held that there is no preemption "because federal labeling requirements create a floor, not a ceiling, for state regulation." Colacicco, 521 F.3d at 271-72, n. 17, *quoting* Levine v. Wyeth, 944 A.2d 179, ¶ 6 (Vt. 2006), *cert. granted*, 128 U.S. 1118 (2008).

[8] The Court notes that the key factual distinction between the present Paxil birth defect cases and Colacicco is that the FDA has never considered a warning with regard to birth defects. However, in the case at bar, only the generic manufacturer is left in the case, so the Court need not consider in this instance whether a failure to warn claim against a manufacturer of Paxil, a listed drug, is preempted.

Compare 21 C.F.R. 314.70(c)(6)(iii)(A) with 21 C.F.R. § 314.150(b)(10).  Therefore, if state law regarding failure to warn is not preempted, it would be impossible for Apotex to meet both requirements.

Plaintiffs argue that the Hatch-Waxman Amendments act only to limit FDA actions toward generic manufacturers, but do not diminish Apotex's responsibilities to comply with state law.  They argue that Apotex as a generic manufacturer could have sought an exception to the labeling requirements from the FDA to comply with state laws.  Plaintiffs argue 21 C.F.R. § 314.150(b)(10) allows certain exceptions to the "same label" requirement.  However, those exceptions relate only to whether a new patent was granted on the listed drug or whether a period of exclusivity is accorded to the listed drug.  21 C.F.R. § 314.150(b)(10)(i) and (ii).

Plaintiffs assert that Apotex had an obligation under both federal and state law to disclose all known risks and seek to update its labeling to protect the public safety, regardless of the FDA's limitations.  They assert that Defendants could have complied with both state and federal law.   They characterize their state law claims as "parallel claims" to the alleged violations of FDA regulations for the failure of Apotex to disclose known risks.

Finally, citing to case law from other Circuits, Plaintiffs assert that the Complaint alleges design defect claims that are not preempted.  Even if federal labeling requirements preempt failure to warn claims, the FDA regulatory scheme does not shield manufacturers from liability for defects during the manufacturing or design process.

Following the Colacicco opinion, only one district court has  considered this exact

question whether preemption does apply to claims against a generic manufacturer for failure to warn claims based upon the labeling ("labeling" includes inserts given to patients by physicians and/or pharmacists).[9] Mensing v. Wyeth, --- F.Supp.2d ---, 2008 WL 2444689 (D.Minn. June 17, 2008).[10] The Minnesota court concluded that a generic manufacturer has no legal duty to propose revised labeling to the FDA, and even if it does voluntarily propose such a change, approval of the change with regard to the generic product and the listed drug is left to the discretion of the FDA. 2008 WL 2444689 at *8. Thus, the result of that request would "require speculation about what the FDA might have done." Id. Therefore, the Court concluded that imposing an affirmative state law duty to add safety information upon a generic manufacturer would directly conflict with the statutory scheme of the Hatch Waxman Act. Id.

This Court agrees with the analysis and conclusion of the decision in Mensing finding preemption of state law failure to warn claims against a generic manufacturer/distributor such as the Apotex Defendants. Because the FDA, pursuant to

---

[9] On July 18, 2008, Plaintiffs submitted a Notice of Supplemental Authority relying upon Tucker v. SmithKline Beechum Corp., 2008 WL 2788505 (S.D.Ind. 2008). In Tucker, the District Court reversed its earlier ruling dismissing the case on preemption grounds. This case involved a claim for failure to warn of increased suicidality upon ingestion of Paxil, a listed drug (i.e., not a generic drug).

[10] Another post-Colacicco decision concluded that state law claims were preempted against a generic manufacturer of an over-the-counter ("OTC") drug. Gaeta v. Perrigo Pharmaceuticals Company, --- F.Supp.2d ---, 2008 WL 2548813 (N.D. Cal. June 13, 2008). However, as in Colacicco, the Gaeta decision also mentioned that the FDA had once rejected a warning as to the ibuprofen drug at issue.

A third decision involving similar facts as Colacicco also followed that decision. Mason v. Smithkline Beecham Corp., 546 F.Supp.2d 618 (C.D. Ill. 2008) (preemption of claims of failure to warn of suicidality for Paxil).

the FDCA statutory scheme as amended by the Hatch Waxman Act, requires generic drugs to have the same labeling as listed drugs, these federal laws preempt such a state law claim. Unlike a manufacturer of a listed drug, a generic manufacturer has a limited ability to even suggest a labeling change, subject solely to the discretion of the FDA to change the labeling for both the generic and the listed drug. Therefore, compliance with a state law duty to warn would conflict with the federal statutory scheme.

However, this preemption does not extend to manufacturing defect claims that arise separate and apart from a failure to warn claim. Given that the Complaint in this case appears to merge the theories of failure to warn and design/manufacturing defect under broader theories of negligence and strict liability, the Court will grant the present motion to dismiss, without prejudice to Plaintiffs filing an amended complaint separating out the failure to warn, design defect, and manufacturing defect claims.[11]

## IV.  CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Motion to Remand and for Attorneys Fees and Costs is hereby **DENIED** [DE 15];

2. Defendants Apotex Corp. and Apotex Inc.'s Motion to Dismiss [DE 6] is hereby **GRANTED in part** as to failure to warn claims, but **DENIED** as to design defect and manufacturing defect claims;

---

[11] Plaintiffs may restate their failure to warn claims against the Apotex Defendants in the same document, which though they would be subject to dismissal pursuant to this Order, would allow a cleaner record for appellate purposes, and will allow the same claims to progress against SmithKline Beecham, who remains in this case.

3. Plaintiffs shall file an Amended Complaint by August 29, 2008 pursuant to this Order;

4. The parties should submit a proposed scheduling order by August 29, 2008 regarding the parties' suggestions as to a trial date and pretrial deadlines.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of August.

JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record on CM/ECF